Brian L. HUSSONG,
Petitioner-Appellant,

v.

WARDEN, WISCONSIN STATE
REFORMATORY,
Respondent-Appellee.

No. 79–1999.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 25, 1980.

Decided June 6, 1980.

Stephen M. Glynn, Milwaukee, Wis., for petitioner-appellant.

Pamela Magee-Heilprin, Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before SWYGERT, CUMMINGS and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner-appellant, a Wisconsin state prisoner, appeals from a decision and order dismissing his petition for a writ of habeas corpus under section 2254, 28 U.S.C. § 2254, in which petitioner alleged that he was in custody in violation of section 2515 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("the federal wiretap statute"), 18 U.S.C. § 2515. The basis for the district court's dismissal was the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We affirm the dismissal of the petition, but we rest our decision on different grounds. Assuming as we must that the allegations in the petition are true, we hold that petitioner's incarceration in violation of section 2515 of the federal wiretap statute does not meet the required "complete miscarriage of justice" standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute.

I

In December 1971 the Brown County, Wisconsin District Attorney obtained an order allowing the interception of wire communications of the petitioner, Brian L. Hussong, in order to gain information concerning the homicide of Neil LeFave. Nine days later Hussong was arrested and

charged with first degree murder. Asserting that evidence derived from the wiretap had been illegally obtained, Hussong moved to suppress the evidence. It is conceded, for purposes of this appeal, that he received a full and fair opportunity to litigate his suppression claim in the state court. When his motions to suppress were denied, the incriminating evidence was introduced against him at trial. Hussong was convicted of first degree murder and sentenced to life imprisonment. His conviction was affirmed by the Wisconsin Supreme Court.[1]

Hussong filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. The petition asserted that Hussong's custody was in violation of section 2515 of the federal wiretap statute, 18 U.S.C. § 2515, because he was convicted on the basis of evidence obtained in violation of section 2518 of the federal wiretap statute, 18 U.S.C. § 2518.[2] The following statutory violations were alleged: (1) no probable cause to believe that he had committed the offense of first degree murder, (2) no probable cause to believe that communications concerning that offense would be obtained through the interception, (3) no showing that other investigative procedures had been tried and had failed or reasonably appeared unlikely to succeed or to be too dangerous if tried, (4) no particularized showing establishing probable cause to believe that additional communications would occur after the described communication had been obtained and yet the interception did not automatically terminate after the first communication of the type described was obtained, and (5) failure to minimize the interception of communications not otherwise subject to interception.[3]

The district judge dismissed the petition on the basis that Congress in enacting the federal wiretap statute had "not conferred a broader scope on review of claims of illegal surveillance than that provided by the Supreme Court for Fourth Amendment claims in [*Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)]" and that Hussong had received the required full and fair hearing in the state court.[4] Upon the issuance of a certificate of probable cause, this appeal ensued.

---

1. *Hussong v. State*, 62 Wis.2d 577, 215 N.W.2d 390 (1974).

2. Petitioner also alleged that his custody violated the United States Constitution. The constitutional allegations are not before us.

3. Section 2518(3) of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2518(3) provides:

> Upon such application the judge may enter an ex parte order, . . . authorizing or approving interception of wire or oral communications . . . if the judge determines on the basis of the facts submitted by the applicant that—
> (a) there is probable cause for belief that an individual . . . has committed . . . a particular offense . . .
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried and to be too dangerous;
>          *     *     *     *     *     *
> Section 2518(1)(d), 18 U.S.C. § 2518(1)(d), requires *inter alia*:

> If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;
>          *     *     *     *     *     *
> Section 2518(5), 18 U.S.C. § 2518(5), provides *inter alia*:
> Every order and extension thereof shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . .

4. In *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted.)

## II

We begin by discussing the crucial difference between *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) and the case at bar. In *Stone v. Powell, supra*, the Supreme Court decided the scope of a judicially-created exclusionary rule, whereas the instant case involves an exclusionary rule of congressional origin.

The exclusionary rule interpreted in *Stone* was created in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) when the Supreme Court held that implementation of the Fourth Amendment required the exclusion at trial of evidence obtained in an unconstitutional search or seizure. In *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), the *Mapp* exclusionary rule was held cognizable in a federal habeas corpus petition brought by a federal prisoner. The Court noted that its prior decisions had already established that habeas was available to state prisoners alleging that they had been convicted on the basis of evidence obtained in violation of the Fourth Amendment. *Kaufman v. United States*, 394 U.S. at 225, 89 S.Ct. at 1073. Then seven years later, in *Stone v. Powell, supra*, the Supreme Court reversed itself as to the availability of habeas for prisoners alleging Fourth Amendment violations. In *Stone*, two state prisoners had petitioned for the federal habeas corpus relief that was permitted in *Kaufman*.[5] The *Stone* Court reconsidered the issue decided in *Kaufman* and held that after a defendant had received a full and fair opportunity to litigate his suppression claim in the state courts, his custody did not violate the Fourth Amendment. The Court was careful to explain that it was deciding the scope of its own exclusionary rule and not the scope of the federal habeas statute. *Stone v. Powell*, 428 U.S. at 494 n.37, 96 S.Ct. at 3052 n.37.

The instant case presents a different problem because petitioner here seeks habeas corpus relief for an alleged violation of an exclusionary rule that is of congressional rather than judicial origin. The federal wiretap statute, 18 U.S.C. § 2515, provides that evidence derived from wiretaps made in violation of the wiretap statute shall not "be received in evidence in any trial . . ."[6] Although the scope of the judicially-created exclusionary rule was determined and redetermined by the Supreme Court on the basis of changing policy considerations, the scope of the exclusionary rule contained in the wiretap statute must be interpreted by the courts according to the principles of statutory construction.[7] As we perceive the issue in this case, if a violation of the exclusionary rule in the wiretap statute is not cognizable on habeas, it must be for one or both of two reasons. First, the language or

---

**5.** The law was clear that the habeas corpus statute, at least since *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), provided "broad collateral re-examination of state criminal convictions [where constitutional violations were alleged.]" *Stone v. Powell*, 428 U.S. at 477, 96 S.Ct. at 3044.

**6.** Section 2515, 18 U.S.C. § 2515, provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

**7.** The Supreme Court has recognized the distinction between the judicial and statutory exclusionary rules. In *United States v. Giordano*, 416 U.S. 505, 524, 94 S.Ct. 1820, 1831, 40 L.Ed.2d 341 (1974), the Court rejected the argument that the scope of suppression under section 2515, 18 U.S.C. § 2515, was restricted by the judicially-created exclusionary rule:

The issue does not turn on the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights, but upon the provisions of Title III.

. . . . .

Six months after deciding *Stone v. Powell, supra*, the Supreme Court again acknowledged: "The availability of the suppression remedy for these statutory, as opposed to constitutional, violations, . . . turns on the provisions of Title III rather than the judicially fasioned exclusionary rule . . . ." *United States v. Donovan*, 429 U.S. 413, 432 n.22, 97 S.Ct. 658, 670 n.22, 50 L.Ed.2d 652 (1977).

history of the wiretap statute may indicate that violations of section 2515 were not intended to be reviewable on federal habeas corpus (in which case our decision would be based on an interpretation of the exclusionary rule in the wiretap statute). Second, the federal habeas statute, 28 U.S.C. § 2254, which does not contemplate relief for all nonconstitutional violations of federal law, may not provide relief for violations of section 2515 of the federal wiretap statute (in which case our decision would be based on an interpretation of the federal habeas statute).

The district court here and two other district courts have construed the statutory exclusionary rule, section 2515, to be identical in scope with the judicially-created exclusionary rule after *Stone v. Powell, supra. Pobliner v. Fogg,* 438 F.Supp. 890 (S.D.N.Y. 1977); *Zagarino v. West,* 422 F.Supp. 812 (E.D.N.Y.1976).[8] Because habeas review of the judicial rule was precluded in *Stone,* habeas review of the statutory rule was held similarly unavailable.

■ We do not agree that the scope of section 2515 can be construed to conform to the holding in *Stone.* We have examined, as did the district court, the legislative history of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. For the reasons that follow, we do not find that Congress intended to preclude federal habeas corpus relief for violations of the statutory exclusionary rule.

It is true that the Senate Report states that section 2515, 18 U.S.C. § 2515, requiring suppression of evidence obtained in violation of the Act, was not intended "generally to press the scope of the suppression role beyond present search and seizure law. *See Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed.2d 503 (1954)." S.Rep. No. 1097, 90th Cong., 2d Sess. *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2185. In *Walder v. United States, supra,* the Supreme Court held that illegally obtained evidence could be used at trial to challenge a defendant's credibility where that defendant had "affirmatively resort[ed] to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Walder v. United States,* 347 U.S. at 65, 74 S.Ct. at 356 (footnote omitted). That case bears on the scope of the exclusionary rule at trial and is not relevant to the issue of collateral review on federal habeas corpus.

Even if we assume that Congress intended to incorporate "present search and seizure law" as to suppression generally, including the availability of review on federal habeas corpus, we cannot agree with the district judge that "[s]ince Congress has essentially incorporated the Fourth Amendment standards into Title III, it follows that the policies underlying *Stone* apply with as much force to claims for exclusion of evidence brought under [the federal wiretap statute] . . . ."[9] In 1968, the law on the availability of habeas relief for state prisoners who alleged Fourth Amendment violations favored allowing the petition. Less than a year after the wiretap statute was enacted, the Supreme Court decided in *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) that federal habeas relief under 28

8. The court in *Pobliner v. Fogg, supra,* appears to have relied on the reasoning in *Zagarino v. West, supra.*

9. Since *Stone* was decided eight years after the federal wiretap law was enacted, we can only assume that the district judge interpreted the term "present search and seizure law" in the Senate Report as meaning the law at the time the statute is interpreted rather than at the time the statute was enacted. It is clear that the judge in *Zagarino v. West,* 422 F.Supp. 812, 816 (E.D.N.Y.1976) so interpreted the legislative history because he stated: " . . . . the scope of habeas review on a claim of admission or use of illegal wiretap evidence . . . depends on the *current* view of the usefulness of extending the exclusionary rule to collateral review of fourth amendment claims." (emphasis added)

That the drafters of the federal wiretap statute carefully researched then-present suppression law is clear from the detailed analysis and abundant citations contained in the Report. We are persuaded that the phrase "present search and seizure law" refers to the law at the time the Senate Report was written.

U.S.C. § 2255 was available to federal prisoners alleging violations of Fourth Amendment search and seizure law. As to the availability of habeas for state prisoners under 28 U.S.C. § 2254, the Court stated:

> Our decisions leave no doubt that the federal habeas remedy extends to state prisoners alleging that unconstitutionally obtained evidence was admitted against them at trial. *See, e. g. Mancusi v. De-Forte*, 392 U.S. 364 [88 S.Ct. 2120, 20 L.Ed.2d 1154] (1968) [issued after the enactment of the federal wiretap statute]; *Carafus v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *see also Henry v. Mississippi*, 379 U.S. 443, 452 [85 S.Ct. 564, 13 L.Ed.2d 408] (1965).

*Kaufman v. United States*, 394 U.S. at 225, 89 S.Ct. at 1073.

If Congress did intend the wiretap statute to reflect then existing search and seizure law on the availability of federal habeas to state prisoners, it is more likely than not that violations of the statute were intended to be cognizable.

Moreover, we do not believe, as did the district judge, that section 2518(10)(a) of the wiretap statute, 18 U.S.C. § 2518(10)(a), requiring a suppression motion to be made before trial if possible, demonstrates a congressional judgment that the exclusionary rule is only useful early in the proceeding and not on habeas.[10] As we read the legislative history of section 2518(10)(a), Congress had an entirely different rationale for requiring a pre-trial motion to suppress:

> The motion must be made before the trial, hearing, or proceeding unless there was no opportunity to make the motion or the person was not aware of the grounds of the motion, for example, when no notice was given under paragraph (9), discussed above. Care must be exercised to avoid having a defendant defeat the right of appeal under paragraph (b), discussed below, by waiting until trial. (*Giacona v. United States*, 257 F.[2d] 450 (5th), *certiorari denied*, 358 U.S. 873, 79 S.Ct. 113 [3 L.Ed.2d 104] (1958).)

S.Rep. No. 1097, 90th Cong., 2d Sess. reprinted in 1968 U.S.Code Cong. & Admin. News 2112, 2195.

In *Giacona v. United States*, 257 F.2d 450 (5th Cir.), *cert. denied*, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958), cited in the Report, the Government argued that the defendant had waived his illegal search claim by waiting until trial to move to suppress the evidence. At that time, Rule 41(e) of the Federal Rules of Criminal Procedure provided:

> The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, *but the court in its discretion may entertain the motion at the trial or hearing.* (emphasis added.)

The Fifth Circuit first commented that motions for suppression are always better made before trial so as not to interrupt the trial and divert the jury's attention to a collateral matter, and that the enactment of 18 U.S.C. § 1404, permitting the Government to appeal from an order granting a motion to suppress made before trial, increased the importance of requiring suppression motions to be made before trial.[11] Then the court stated that it would hold that the suppression motion was improper but for the language in Rule 41(e) which gave the trial judge "discretion" to entertain the motion at trial. The language of section 2518(10)(a) of the wiretap statute tracks the language of former Rule 41(e) but intentionally omits the judicial discretion exception that troubled the court in *Giacona*. We conclude that the congressional purpose in requiring suppression mo-

---

**10.** Section 2518(10)(a), 18 U.S.C. § 2518(10)(a), provides *inter alia*:

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. . . .

**11.** Otherwise a defendant could thwart the Government's right to appeal by waiting until jeopardy attached.

tions to be made before trial is related to the Government's right of appeal and not to a congressional judgment that the exclusionary rule is useful only early in the proceeding and not on habeas.

Because four years after *Stone v. Powell* federal judges are routinely denying habeas review to Fourth Amendment claims, it would be easy to interpret the nonconstitutional statutory exclusionary rule as mandating the same result. The facts are, however, that the exclusionary rule in the wiretap statute was created by the legislature, not the courts, and at a time when the Supreme Court was allowing state prisoners to bring habeas petitions alleging search and seizure violations. In these circumstances we cannot find that habeas review is precluded by the statutory exclusionary rule.

### III

We affirm the dismissal of Hussong's petition on the ground that the federal habeas statute, 28 U.S.C. § 2254, does not provide a remedy for this nonconstitutional federal claim. On its face the habeas statute offers relief to all state prisoners who are in custody "in violation of the Constitution *or laws or treaties of the United States*" (emphasis added), but the statute has never been interpreted to encompass every nonconstitutional federal claim. In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court defined the scope of habeas relief for nonconstitutional violations of federal law when it rejected a habeas petition alleging a violation of Rule 32(a) of the Federal Rules of Criminal Procedure:

**12.** Rule 32(a) gives defendants the right to make a statement before sentencing.

In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the statute at issue was section 2255, 28 U.S.C. § 2255, allowing claims by federal prisoners. "There can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254. . . . § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974). The law concerning the scope of habeas for federal nonconstitutional claims has developed with reference to section 2255 rather than section 2254 because "few

It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

368 U.S. at 428, 82 S.Ct. at 471 (citations omitted).[12]

The *Hill* standard was applied again in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), when the Court set aside the defendant's conviction for an act which was no longer criminal because of a change in the law:

There can be no room for doubt that such a circumstance "inherently results in a complete miscarriage of justice" and "present[s] exceptional circumstances" that justify collateral relief . . ..

417 U.S. at 346–47, 94 S.Ct. at 2305.

Only last year the Supreme Court held that a violation of Rule 11 was not cognizable on federal habeas corpus because it was not jurisdictional or constitutional and could not result in a " 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.' " *United States v. Timreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (citations omitted).[13]

▬ Turning to the case at bar, we note that a violation of the federal wiretap stat-

situations can be imagined in which a state prisoner has a federal nonconstitutional claim [and thus] the problem has been virtually unlitigated in recent years." "Developments-Federal Habeas Corpus" 83 Harv.L.Rev. 1033, 1070 (1970).

**13.** In *Hill* and in *Timreck*, the petitioners had not exhausted their remedies on direct appeal. In *Davis*, however, the petitioner had appealed unsuccessfully. The same standards were applied in all three cases. *See also Stone v. Powell*, 428 U.S. at 477 n.10, 96 S.Ct. at 3044 n.10, suggesting that the *Hill* standard applies generally to nonconstitutional federal claims.

ute is neither constitutional nor jurisdictional. Because it has been conceded for purposes of this appeal that Hussong received a full and fair hearing in the state courts on his suppression claim, we do not find that Hussong's custody is " 'inconsistent with the rudimentary demands of fair procedure.' " *United States v. Timreck*, 441 U.S. at 784, 99 S.Ct. at 2087 (citations omitted). If Hussong's petition states a violation of nonconstitutional federal law which is cognizable on habeas, it must be because Hussong's custody is "a complete miscarriage of justice" warranting exceptional relief. *United States v. Timreck, supra.* We conclude that even if Hussong was convicted on the basis of evidence admitted in violation of the wiretap statute, his custody does not constitute "a complete miscarriage of justice."

We agree with petitioner that the violations he alleges are not mere "formal requirements" as the *Hill* Court described the violations there (368 U.S. at 426, 82 S.Ct. at 470), or "technical violation[s]," the phrase used to describe the alleged errors in *Timreck* (441 U.S. at 784, 99 S.Ct. at 2087). Hussong has asserted *inter alia* that there was not probable cause to believe that he committed the murder and no probable cause to believe that communications concerning the offense would be obtained through the wiretap. He argues further that his conviction, based on evidence obtained from the wiretap, was the "direct consequence of the violation."

Although Hussong has alleged a substantial violation of federal law, the fact is that he was convicted on the basis of qualitatively unimpaired evidence—even though it may have been tainted because of procedural irregularities. Section 2515, the statutory exclusionary rule, deters violations of the wiretap statute, but like its judicially-created counterpart, it also "deflects the truth-finding process and often frees the guilty." *Stone v. Powell*, 428 U.S. at 490, 96 S.Ct. at 3050. This court has noted the Supreme Court's observation that evidence obtained in violation of search and seizure law " 'is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.' " *United States ex rel. Henne v. Fike*, 563 F.2d 809, 812 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978), quoting *Stone v. Powell*, 428 U.S. at 490, 96 S.Ct. at 3050. Wiretap evidence, in particular, is generally more accurate even than whatever circumstantial evidence is presented at trial. Thus, we have no reason to think that Hussong was not convicted on the basis of probative and reliable evidence, even if that evidence was wrongfully admitted. In short, there is nothing in the record to indicate that Hussong is not guilty of the crime for which he was convicted.

This case is distinguishable from *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), where the Supreme Court held that the nonconstitutional issue raised was cognizable on habeas. In *Davis*, unlike the instant case, the petitioner alleged that his conviction and punishment were for an act that the law did not make criminal. That, said the Court, would be " 'a complete miscarriage of justice.' " 417 U.S. at 346, 94 S.Ct. at 2305. Although in the instant case Hussong alleges that his statutory rights were violated, the issues he asks us to redetermine have "no bearing on the basic justice of his incarceration." *Stone v. Powell*, 428 U.S. at 492 n.31, 96 S.Ct. at 3051 n.31. We therefore conclude that Hussong, having received a full and fair hearing in the state courts, cannot raise his section 2515 claim on federal habeas corpus.

Of course, if Hussong's allegations are correct, the evidence should have been suppressed at trial. But this case is not before us on a direct appeal basis. The issue here is whether the alleged violation resulted in "a complete miscarriage of justice" justifying habeas review. We think not.

The district court's dismissal of the petition is accordingly affirmed.

BAUER, Circuit Judge, concurring.

In the case at bar we hold that the federal habeas statute, 28 U.S.C. § 2254, does not

provide a remedy for the petitioner's claim that he is incarcerated in violation of the federal wiretap statute, 18 U.S.C. § 2515. In my view, it is therefore unnecessary to determine the applicability of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), to habeas review of federal claims of illegal surveillance under the federal wiretap statute. Accordingly, I concur in the judgment of the Court affirming the dismissal of the petition on the ground that the petitioner's claim is not cognizable under Section 2254 solely for the reasons expressed in Part III of the opinion.