**Aaron LORD, Petitioner–Appellant,**

v.

**John LAMBERT, Respondent–Appellee.**

No. 02–35124.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 2003.

Filed Oct. 27, 2003.

Robert H. Gombiner and Laura Mate, Federal Public Defender, Seattle, WA, for the petitioner-appellant.

Gregory J. Rosen, Office of the Attorney General, Criminal Justice Division, Olympia, WA, for the respondent-appellee.

Before: THOMPSON, HAWKINS, and BERZON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Aaron Lord appeals the district court's denial of his petition for a writ of habeas corpus. Lord contends he is entitled to habeas relief under 28 U.S.C. § 2254 because during his trial the state court erred in admitting the testimony of Todd Rogers. Lord argues that Rogers' testimony should have been excluded because it derived from the interception of a cordless telephone conversation in violation of Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. § 2510 *et seq.*

We conclude that even if Rogers' trial testimony was the product of a Title III violation and should have been excluded, Lord's habeas claim fails because the admission of that testimony did not deprive Lord of due process or result in a miscarriage of justice. Accordingly, we affirm.

## I. *BACKGROUND*

### A. *Relevant Facts*

On March 10, 1997, Robert Colebank, a private citizen in Maryland, intercepted a private cordless telephone conversation between his neighbor, Todd Rogers, and petitioner Aaron Lord, a Washington resident. Unbeknownst to Rogers and Lord, Colebank listened to their conversation. From what they said, Colebank believed they planned for Rogers to fly to Seattle and assist Lord in committing a murder. Colebank reported what he heard to the Maryland police who passed on the information to the Seattle police. When Rogers arrived at the Seattle airport, he, Lord, and a third individual (the intended victim Andre Anthony) were arrested. While transporting Rogers to the police station, Seattle Police Detectives Earl Davis and Cloyd Steiger had a conversation in which they used terms from the intercepted telephone conversation, thereby letting Rogers know that they had information regarding the planned crime.

After twice waiving his *Miranda* rights, Rogers gave the Seattle police a recorded statement in which he admitted that he had flown to Seattle to help Lord dispose of Anthony's body after Lord killed him. According to Rogers, Lord wanted to kill Anthony because Anthony had stolen approximately $50,000 from him. Rogers said that Lord agreed to pay him for his assistance in the crime.

### B. *Trial Court Proceedings*

Prior to trial, Lord moved to suppress the contents of the intercepted conversation and all evidence derived from it, including Rogers' statement to the police. The trial court ruled that the interception of the telephone call violated Lord's and Rogers' rights under Washington Revised Code ch. 9.73 and that any testimony by Colebank relating to the intercepted conversation would be excluded. The court also ruled that Rogers' statement to the police would be excluded, but that Rogers could testify at trial. The court reasoned that Rogers' trial testimony was admissible because it was sufficiently removed from the taint of the unlawful interception.

At trial, Rogers testified against Lord pursuant to a plea agreement. He said that Lord had asked him to fly to Seattle to help him murder Anthony and dispose

of the body. Two friends of Lord's testified as well. Cliff Pence testified that a couple of days after Lord told him that Anthony had broken into Lord's house, Lord asked Pence whether he would help him "dispose of something." Pence laughingly asked, "Andre's body?" Lord responded, "Yeah." Pence did not believe that Lord was joking.

Marvin Holland testified that Lord told him that he intended to "do Andre" for the acts that Andre had committed against him. Holland also testified that a few weeks later Lord explained how he planned to fly Rogers out to Seattle so that Rogers could help him commit a robbery with Anthony and then kill Anthony.

In his defense, Lord testified that he and Rogers were planning to rob a bank together but that he never had any intention of killing Anthony. Lord said he was only joking when he discussed details of killing Anthony with Rogers and when he asked Pence to help him dispose of Anthony's body. He denied talking to Holland about his anger towards Anthony.

The jury convicted Lord of conspiracy to commit murder in the first degree, attempted murder in the first degree, and criminal solicitation to commit murder. He was sentenced to 240 months on each count to run consecutively. Rogers pleaded guilty to a reduced charge of conspiracy to commit second degree murder, and was sentenced to 36 months.

## C. *Direct Appeal*

Lord appealed his conviction to the Washington Court of Appeals, contending that the admission of Rogers' testimony at trial violated his privacy rights under Washington law. The state cross-appealed, arguing in part that under Maryland law the cordless telephone intercept was legal because Maryland's wiretap statute expressly excluded the interception of cordless telephone communications from a violation of the statute. The state appellate court affirmed Lord's conviction, holding that Maryland law applied and, under the law of that state, the interception of the Lord–Rogers cordless telephone conversation was not illegal. The state appellate court also held that there had been no violation of federal law, because Title III did not protect the privacy of cordless telephone conversations. Lord moved for reconsideration, which was denied, and for discretionary review by the Washington Supreme Court, which was also denied.

## D. *Habeas Proceedings*

Lord then filed a petition for a writ of habeas corpus in the federal district court. The district court denied the petition. Adopting the report and recommendation of the magistrate judge, the district court concluded that the state law claims Lord asserted were not cognizable on federal habeas review. The court also held that Lord's Fourth Amendment claim was barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), because he had had a "full and fair opportunity to litigate the issue."

As for Lord's claim that Rogers' testimony should have been excluded as the fruit of a Title III violation, the district court determined that claim was not cognizable upon federal habeas review because any error by the state court did not result in a "complete miscarriage of justice" or deprivation of due process under *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), and *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

The district court also concluded that even if Lord had stated a cognizable habeas claim, he had not demonstrated that the decision by the Washington state courts (that there was no Title III violation) was

contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

Lord then filed a notice of appeal, which the district court construed as a request for a certificate of appealability; the request was denied. A motions panel of this court, however, granted a certificate of appealability on the sole issue: "Whether Appellant is entitled to federal habeas corpus relief for the admission of Todd Rogers' testimony at trial. *See* 28 U.S.C. § 2253(c)(2)." The State did not file any objection to the issuance of the certificate, although it could have done so under Ninth Circuit Rule 22–1(c).[1]

## II. *DISCUSSION*

### A. *Jurisdiction*

■ The issuance of a certificate of appealability ("COA") is a jurisdictional prerequisite to appeal in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1); *Gatlin v. Madding,* 189 F.3d 882, 886 (9th Cir.1999), *cert. denied,* 528 U.S. 1087, 120 S.Ct. 815, 145 L.Ed.2d 686 (2000). Here, it is questionable whether the COA should have been issued, because it does not appear that Lord "made a substantial showing of the denial of a constitutional right" as required by § 2253(c)(2). Lord's petition focuses on the alleged violation of the *statutory* provisions of Title III.

Nevertheless, we have jurisdiction to reach the merits of Lord's petition. *Gatlin,* 189 F.3d at 887; *see also James v. Giles,* 221 F.3d 1074, 1076 (9th Cir.2000). In *Gatlin* we explained, "[O]nce a COA has been issued without objection by this

court, the procedural threshold for appellate jurisdiction has been passed and we need not revisit the validity of the certificate in order to reach the merits." *Gatlin,* 189 F.3d at 887.

### B. *Scope of Habeas Relief*

Assuming that the interception of the cordless telephone conversation between Rogers and Lord violated Title III and that Rogers' testimony at trial was sufficiently connected to the illegal interception to constitute a "fruit of the poisonous tree" (issues we do not decide in this case), Lord's Title III claim is not cognizable under the standards for federal habeas review, because the claim does not involve an "error of the character or magnitude" to justify habeas relief. *Hill,* 368 U.S. at 428, 82 S.Ct. 468.

■ Not every asserted error of law will prompt habeas relief. *Davis,* 417 U.S. at 346, 94 S.Ct. 2298. Where the error is neither jurisdictional nor constitutional, the appropriate inquiry is whether the error is "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure," and whether the error "present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill,* 368 U.S. at 428, 82 S.Ct. 468 (internal quotation marks omitted); *see also Davis,* 417 U.S. at 346, 94 S.Ct. 2298; *Henry v. Kernan,* 197 F.3d 1021, 1031 (9th Cir.1999), *cert. denied,* 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000) (holding that petitioner was not entitled to habeas relief under 28 U.S.C. § 2254 because the introduction of challenged evidence at trial did not violate

---

1. At oral argument, the state moved to vacate the COA. That motion is denied as untimely.

*See* 9th Cir. R. 22–1(c).

due process or petitioner's right to a fair trial).

In applying the *Hill* inquiry to the case before us, we find *Hussong v. Warden,* 623 F.2d 1185 (7th Cir.1980), instructive. In *Hussong,* the petitioner contended he was entitled to habeas relief because he was convicted on evidence obtained in violation of Title III. The Seventh Circuit held that the petitioner's custody was not "inconsistent with the rudimentary demands of fair procedure" because he had received a full and fair hearing on his suppression claim in the state courts. *Id.* at 1191. The Seventh Circuit further held that there had not been a "complete miscarriage of justice" because there was no reason to believe that the wiretap evidence was unreliable or that the petitioner was not guilty of the crime of which he had been convicted: "[T]he fact is that [the petitioner] was convicted on the basis of qualitatively unimpaired evidence even though it may have been tainted because of procedural irregularities." *Id.*

As in *Hussong,* Lord received a full and fair hearing in the state courts. He fully argued the merits of his suppression claim before the trial court, which held two separate evidentiary hearings. The claim was also extensively briefed and argued before the state appellate court, and presented to the state supreme court.

Moreover, even if Lord was convicted on the basis of Rogers' testimony, other evidence admitted at trial established that Rogers' testimony was reliable. Lord took the stand and confirmed the details of the telephone conversation as related by Rogers. Pence and Holland, two other witnesses who testified at trial, corroborated Rogers' testimony. There was no miscarriage of justice. *See Henry,* 197 F.3d at 1031 (holding that the admission of a doctor's testimony regarding petitioner's desire to kill the murder victim did not violate fundamental due process or result in a complete miscarriage of justice because other witnesses testified regarding petitioner's feelings towards the victim and comments petitioner had made regarding killing the victim).

**AFFIRMED.**