## Commonwealth *vs.* George Barboza.

No. 00-P-727.

Middlesex. November 7, 2001. - March 1, 2002.

Present: Laurence, Smith, & Kafker, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Motion to suppress. *Evidence,* Wiretap, Tape recording, Cross-examination, Bias. *Witness,* Bias. *Search and Seizure,* Fruits of illegal search.

At the trial of indictments alleging rape of a child under sixteen and indecent assault and battery on a child under fourteen, recordings of two telephone conversations between the defendant and the victim, made by the victim's father without the consent of either the victim or the defendant in order to protect his child from sexual exploitation by the defendant, did not have to be suppressed under the Massachusetts wiretap statute, G. L. c. 272, § 99, where no police or governmental conduct was involved in the recording, and therefore no deterrent purpose would be served by suppressing the conversations. [103-105]

The failure of a criminal defendant's attorney to argue at the trial of indictments alleging rape of a child under sixteen and indecent assault and battery on a child under fourteen that recordings of two telephone conversations between the defendant and the victim, made by the victim's father without the consent of either the victim or the defendant in order to protect his child from sexual exploitation by the defendant, violated the Federal wiretap statute, 18 U.S.C. §§ 2510 et seq., did not deprive the defendant of a substantial ground of defense, where the recordings did not violate the Federal statute. [105-108]

At the trial of indictments alleging rape of a child under sixteen and indecent assault and battery on a child under fourteen, the testimony of the victim and a greeting card were not "fruit" of the recordings of two telephone conversations between the defendant and the victim, made by the victim's father without the consent of either the victim or the defendant in order to protect his child from sexual exploitation by the defendant, where the recordings were properly admitted into evidence; moreover, the testimony of a police detective could not be considered "fruit" of other, suppressed telephone calls, where the detective was informed of the telephone calls by monitoring the victim's interview with the district attorney's office. [108-109]

At the trial of indictments alleging rape of a child under sixteen and indecent assault and battery on a child under fourteen, the judge erred in foreclosing cross-examination by the defendant on the motives of the victim's family in contacting a civil attorney, but the error was not materially prejudicial, where the evidence against the defendant was overwhelming. [109-110]

INDICTMENTS found and returned in the Superior Court Department on March 4, 1997.

A pretrial motion to suppress evidence was heard by *Robert A. Barton,* J., and the cases were tried before *Nonnie S. Burnes,* J.

*Robert L. Sheketoff* for the defendant.

*Peter A. D'Angelo,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. A father, fearing that his fifteen year old son, Tom,[1] was having a sexual relationship with the fifty-seven year old defendant, George Barboza, placed a tape recording device on the family telephone. He thereby intercepted and recorded four telephone conversations between the defendant and Tom without their knowledge. Two of the conversations were recorded before the father informed the police that he was recording the conversations, and two recordings were made after he had informed the police of his activities. The recorded telephone conversations confirmed the existence of an ongoing sexual relationship between the defendant and Tom. In his ruling on the defendant's motion to suppress the tapes of the four telephone conversations, the motion judge allowed the use of the two earlier calls in evidence and suppressed those recordings made after the police were informed of the secret taping. At trial, in addition to the tape recordings of the two earlier calls, the evidence included Tom's descriptions of numerous acts of indecent touching and oral and anal sex committed by the defendant. The jury convicted the defendant on all four counts of rape of a child under sixteen, and two counts of indecent assault and battery on a child under fourteen.[2]

The defendant raises the following issues on appeal: (1) the recordings of the two earlier calls should have been suppressed; (2) other evidence that he claims was obtained as a result of the recordings should have been suppressed as "fruit of the poisonous tree"; (3) his attorney's cross-examination of witnesses for bias was improperly limited; and (4) ineffective assistance of counsel. For the reasons discussed below, we affirm.

---

[1] A pseudonym.

[2] There was evidence at trial that the defendant's conduct took place over several years.

I. *Evidence at the hearing on the suppression motion.*
Although the motion judge did not make explicit factual find-
ings, the only evidence at the hearing on the suppression mo-
tion was the uncontroverted testimony of the parents of the
victim. The judge's statement at the end of the hearing, and his
subsequent denial of the suppression motion, clearly indicated
that he credited the parents' testimony. See *Commonwealth* v.
*Dayes*, 49 Mass. App. Ct. 419, 420 (2000). See also *Com-
monwealth* v. *Grandison*, 433 Mass. 135, 137 (2001). The
testimony was as follows: Tom was born on May 7, 1981. His
father worked for the defendant in the early 1970's, but the
defendant and Tom's family had only occasional contact until
approximately 1993, when the family moved to the same town
where the defendant lived. They began meeting frequently, and
on some weekends, Tom would stay overnight with the
defendant at his home. The family also spent Christmas with
the defendant at his second home in Florida in 1994 and 1996,
and in 1995, Tom alone visited the defendant in Florida over
February vacation.

Tom's parents began to feel uneasy about their son's close
relationship with the defendant after the family's 1996 visit to
Florida. During that visit, Tom stayed in one hotel room with
the defendant, while his parents and their other son stayed in a
second room. Tom also had little interaction with his parents on
the vacation. They were further disconcerted when Tom an-
nounced that it was his intention after he graduated from high
school to live with the defendant in Florida. After the family
returned from Florida in December, 1996, the defendant called
Tom on a regular basis. The parents noticed that when Tom
spoke with the defendant on the telephone, he would be unusu-
ally quiet, and sometimes even denied afterwards that he had
spoken to the defendant.

After discussing his concerns with his wife, Tom's father
ordered a tape recorder that he had seen advertised in a
magazine in order to record secretly telephone conversations at
his house. Tom's father attached the machine to the telephone
line in his bedroom, and hid it under the bed. Neither Tom nor
his brother knew the tape recorder had been installed. Four
telephone calls between Tom and the defendant were recorded,

two occurring on January 30, 1997, one on February 2, 1997, and one on February 5, 1997. The defendant was calling from his home in Florida. In all of the conversations, the defendant declared that he loved Tom, and in at least the last three conversations, there are references to masturbation. Further, in the second call on January 30, the defendant mentions "making love."

On the evening of January 30, after listening to the tape of the two calls that came that day from the defendant, Tom's father met with members of the Wilmington police department, and played portions of the second taped conversation for them. On February 5, Tom's father and mother confronted Tom, informing him they knew there "was some kind of sexual thing going on" between him and the defendant. On February 7, Tom and his father went to the district attorney's office. During that interview, the father was asked by the district attorney's office not to tape record any additional telephone conversations. A Wilmington police detective, Patrick King, listened to two additional telephone conversations between Tom and the defendant, with Tom's knowledge, before the defendant was arrested upon his return from Florida on February 14. These conversations were not recorded, and were not the subject of the defendant's motion to suppress. On appeal, the defendant argues that testimony concerning the content of these telephone calls should have been suppressed as having been derived from the suppressed recordings. See *infra* at 108-109.

At the close of the hearing, the motion judge stated that "[t]here's no question in the Court's mind at all that the [parents'] primary concern was their son and that everything they did was not to assist law enforcement in their minds but to try to figure out what was going on and what's right for their son and for their family." The judge denied the motion to suppress with respect to the two conversations taped on January 30, "before contacting police." He allowed the defendant's motion to suppress the two recordings of conversations made after Tom's father notified the police that he was recording phone calls, finding that although the parents were not told to continue taping by the police, "under the circumstances, silence by the police made the parents unwitting agents of the police for the

purposes of continuing to record telephone calls from the defendant."

II. *Analysis of the suppression issues.* A. *Massachusetts wiretap statute.* We begin our analysis by interpreting the Massachusetts wiretap statute. Unlike many of its counterparts in other States, or the Federal wiretap statute, the Massachusetts wiretap statute, G. L. c. 272, § 99, requires both parties to consent to the recording of telephone calls for the recording to be legal. *Commonwealth* v. *Hyde*, 434 Mass. 594, 599 (2001). With exceptions not applicable here,[3] the Massachusetts wiretap statute, therefore, "strictly prohibits the secret electronic recording by a private individual of any oral communication . . . ." *Id.* at 595. Nevertheless, the statute does not "mandate that all unlawfully intercepted communications should be suppressed." *Commonwealth* v. *Crowley*, 43 Mass. App. Ct. 919, 919 (1997). See *Commonwealth* v. *Hyde*, 434 Mass. at 601 (drawing distinction between "the admissibility of a secret recording as evidence" and "whether a violation of the statute had occurred"). Rather, it has been held that although "[a]ny person who is a defendant in a criminal trial . . . may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom . . . [if] [t]hat . . . communication was unlawfully intercepted," G. L. c. 272, § 99 P, the "Legislature has left it to the courts to decide whether unlawfully intercepted communications must be suppressed." *Commonwealth* v. *Santoro*, 406 Mass. 421, 423 (1990).

In *Santoro*, the defendant was convicted of being present where betting apparatus was found. He appealed the denial of his motion to suppress recordings of telephone conversations between him and his associate in crime, which were made by his associate without the defendant's knowledge, in violation of G. L. c. 272, § 99. The court affirmed the denial of the suppression motion. The key paragraph in the court's discussion, which merits full quotation, is as follows:

> "Exclusionary rules generally are intended to deter future police conduct in violation of constitutional or statutory

[3]See G. L. c. 272, § 99 D 1 a-f.

rights. However, no police or governmental conduct was involved in the recording of these telephone conversations. A private individual, apparently engaged in unlawful activity himself, recorded the defendant's conversations in violation of § 99. No deterrent purpose would be served by suppressing the intercepted conversations. The exclusionary rule was not designed to protect persons from the consequences of the unlawful seizure of evidence by their associates in crime. See § 99 A (preamble). Indeed, a contrary result would aid criminals by assuring that, in many instances, telephone calls they might unlawfully record could not be used as incriminating evidence."

*Id.* at 423-424.

The defendant here argues that the holding in *Santoro* is limited to the factual situation in which one criminal associate has recorded the other. He further argues that the recordings made by Tom's father should have been suppressed to promote the general purpose of the wiretap statute.

We are not persuaded that *Santoro* is limited to cases involving a criminal defendant recording his associate. In determining whether suppression was required, the court based its decision on the exclusionary rule's purpose of deterring future police misconduct. *Ibid.* See *Commonwealth* v. *Leone*, 386 Mass. 329, 333 (1982) ("Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search"); *Commonwealth* v. *Brandwein*, 435 Mass. 623, 632 (2002) ("exclusionary rule does not exclude evidence obtained by way of purely private conduct or misconduct"). By suppressing the two recordings made after the police were alerted, the motion judge here furthered that objective. As for the first two recordings, "a private individual," without police knowledge, recorded the telephone calls. Moreover, as the motion judge stated, "[t]here's no question in the Court's mind at all that the [parents'] primary concern was their son and that everything they did was not to assist law enforcement in their minds but to try and figure out what was going on and what's right for their son and for their family." See *Commonwealth* v. *Richmond*, 379 Mass. 557, 561 (1980) (no suppression even if opening by mother of defendant's

girlfriend of incriminating letter written by defendant to his girlfriend was unlawful, as "the mother was acting in the interests of her daughter, and not on behalf of the police"). In these circumstances, as in *Santoro*, "no deterrent purpose" related to official misconduct is served by suppressing the conversations. *Commonwealth* v. *Santoro, supra.* See *Commonwealth* v. *Brandwein, supra; Commonwealth* v. *Crowley*, 43 Mass. App. Ct. at 919-920. Just as the exclusionary rule was not designed to protect the defendant in *Santoro* from "the consequences" of the unlawful interception by his criminal associate, we see no reason why the rule should protect the defendant here from the consequences of the unlawful interception by a private citizen, a father, acting in the privacy of his own home, without any government involvement, to protect his child from sexual exploitation by the defendant.

B. *Claims based on Federal wiretap statute.* The defendant argues for the first time on appeal that the interceptions would have violated, and been suppressed under, the Federal wiretap statute, 18 U.S.C. §§ 2510 et seq. (Title III), and that because the State wiretap law must be at least as strict as the Federal law, the interceptions must be suppressed under State law as well. He relies on the failure to argue Federal law as the basis of a claim of ineffective assistance of counsel.

"[A]lthough a State [wiretap] statute may adopt standards more stringent than the requirements of Federal law, thus excluding from State courts evidence that would be admissible in Federal courts, a State may not adopt standards that are less restrictive" and would thereby allow evidence in State court that would be inadmissible in Federal court. *Commonwealth* v. *Vitello*, 367 Mass. 224, 247 (1975). We conclude, however, that Federal law does not change the analysis in the instant case, nor does it create a basis for an ineffective assistance of counsel claim, because, as concluded by all the Federal appellate courts that have considered the proper application of Title III in cases in which custodial parents eavesdrop on or secretly record conversations of their minor children in their own home, no violation of Title III has occurred.

Some Federal courts have found that the Federal statute's one-party consent requirement, 18 U.S.C. § 2511(2)(d), is satis-

Commonwealth *v.* Barboza.

fied in these circumstances, with consent coming from the parent vicariously on behalf of his or her minor child. See *Pollock* v. *Pollock*, 154 F.3d 601, 610 (6th Cir. 1998) (holding secret taping within home by custodial parent of fourteen year old's telephone conversations with her noncustodial parent permissible if consenting parent demonstrates "a good faith, objectively reasonable basis for believing such consent was necessary for the welfare of the child"). After *Pollock*, several other Federal district courts and also some State courts have considered the question, and all have ruled that the parents consented vicariously to the taping of their minor child's conversations, when the taping was motivated by a genuine concern for the child's well being.[4] See *Wagner* v. *Wagner*, 64 F. Supp. 2d 895, 896 (D. Minn. 1999); *March* v. *Levine*, 136 F. Supp. 2d 831, 849 n.39 (M.D. Tenn. 2000), aff'd, 249 F.3d 462 (6th Cir. 2001), cert. denied, 122 S. Ct. 810 (2002); *Williams* v. *Williams*, 459 Mich. 988 (1999) (remanding case to lower court for reconsideration in light of *Pollock*).

Other courts, focusing on their sense of "Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home vis-a-vis each other," *Newcomb* v. *Ingle*, 944 F.2d 1534, 1536 (10th Cir. 1991), cert. denied, 502 U.S. 1044 (1992), have relied on the extension telephone exception, 18 U.S.C. § 2510(5)(a)(i), to uphold the introduction of evidence obtained through taping or eavesdropping within the family home. The extension telephone exception exempts from the statute equipment, e.g., a second residential telephone, used by a telephone service subscriber in the ordinary course of business. This exception has been read to permit family members within their own homes to eavesdrop on, and even record, each other. See, e.g., *Janecka* v. *Franklin*, 843 F.2d 110, 111 (2d Cir. 1988) (intercepts by recording device attached to

---

[4]At the hearing on the motion to suppress, Tom's mother testified that her concerns about Tom motivated Tom's father and her to tape record Tom's conversations with the defendant. She testified: "In my heart I felt that something was wrong, that he was being molested. . . . He was just a boy, fifteen years old, and we couldn't talk to him. He wouldn't talk to us. He wouldn't converse with us. He was doing poorly in school. We had had help . . . we couldn't get through to him in any form that we tried."

home telephone permissible under extension telephone exception); *Newcomb, supra* at 1536 (mother's recording at her home of her minor son's telephone conversations with his father, as father instructed child to set fire to family home, did not violate Title III); *Scheib* v. *Grant*, 22 F.3d 149, 154 (7th Cir.), cert. denied, 513 U.S. 929 (1994) (recording by telephone answering machine attached to extension phone allowed under exception where father concerned about minor child's abuse by mother).

Although the facts of these cases involve one family member intercepting the telephone calls of another to protect a child, we do not read the Federal cases as limiting the parents' rights to intercept calls to those from family members. In fact, in *Vieux* v. *Pepe*, 184 F.3d 59, 67 n.5 (1st Cir. 1999), cert. denied, 528 U.S. 1163 (2000), in which a younger sister eavesdropped on her mother's conversation with the defendant who was feared to have raped her older sister, the court noted that intercepted statements regarding "an alleged crime against another family member, wouldn't be so close a question as one that fell within the scope of Congress's concern about evidence from wiretaps being used in marital disputes."[5] See *New Jersey* v. *Diaz*, 308 N.J. Super. 504, 516 (1998) (audio portion of secretly made videotape of nanny assaulting and verbally abusing infant was properly admitted under vicarious consent exception).

We conclude that a recording by parents of their own minor son talking on the telephone in their own home, motivated by concerns that he was being sexually exploited by an adult, does not violate Title III.[6] As a result, the defendant was not deprived of any substantial ground of defense, *Commonwealth* v. *Safer-*

[5]We note that this court, in its decision in *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 531-533 (1996), cert. denied, 520 U.S. 1245 (1997), which was the subject of the petition for writ of habeas corpus in *Vieux* v. *Pepe, supra*, concluded that eavesdropping on a call between the defendant and the eavesdropper's mother did not violate Title III because of the telephone extension exception, but emphasized that recordings presented different, more difficult issues. The issue of vicarious consent was not raised in that case.

[6]We further note that even if the recording were illegal under Federal law, there is a split among the Federal circuits on whether illegal recordings made by private parties must be suppressed when there has been no police involvement. The Federal suppression provision states: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in

*ian*, 366 Mass. 89, 96 (1974), due to his counsel's not raising the Federal statute below.

C. *Other suppression claims.* The defendant argues that evidence obtained as a result of the interception of his conversations must also be suppressed under 18 U.S.C. § 2515. He claims for the first time on appeal that Tom's testimony is a "fruit" of illegally taped calls. Even if we were to assume that Tom would not have been prepared to testify if he had not been confronted with any tape recordings revealing his relationship with the defendant, the first two recordings were properly admitted and formed a more than sufficient basis for his parents to confront him, which led to his coming forward and testifying. See *Commonwealth* v. *Buchanan*, 384 Mass. 103, 108 (1981) ("The doctrine of the fruit of the poisonous tree . . . is not implicated if the tree is not poisonous").

The defendant also objects for the first time on appeal to the introduction of a sentimental greeting card that he sent Tom with a preprinted message expressing "all the wonderful feelings I've known because of you," and including the language "I love you more than ever . . . for all the reasons that made me fall in love with you in the first place and all the other lov-

---

evidence in any trial . . . before any court . . . of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. In interpreting this provision, the Sixth Circuit in *United States* v. *Murdock*, 63 F.3d 1391 (6th Cir. 1995), cert. denied, 517 U.S. 1187 (1996), read in a "clean hands" exception, so as not to require suppression of an illegal tape made by a private party. The court reasoned that suppression, when there has been no government involvement, "would have no impact on the future conduct of law enforcement officials." *Id.* at 1402, quoting from *United States* v. *Baranek*, 903 F.2d 1068, 1072 (6th Cir. 1990). The Second and Fifth Circuits have adopted the "clean hands" exception as well. See *In re Application of Newsday, Inc.*, 895 F.2d 74, 76 (2d Cir.), cert. denied sub nom. *Gardner* v. *Newsday, Inc.*, 496 U.S. 931 (1990); *Forsyth* v. *Barr*, 19 F.3d 1527, 1545 (5th Cir.), cert. denied sub nom. *Forsyth* v. *Vines*, 517 U.S. 871 (1994). In contrast, the First Circuit in *United States* v. *Vest*, 813 F.2d 477, 481 (1st Cir. 1987), ruled that "to hold that section 2515 allows the government's use of unlawfully intercepted communications where the government was not the procurer 'would eviscerate the statutory protection of privacy from intrusion by illegal private interception' " (citation omitted). See *In re Grand Jury*, 111 F.3d 1066, 1077-1078 (3d Cir. 1997); *Chandler* v. *United States Army*, 125 F.3d 1296, 1302 (9th Cir. 1997). We need not enter into this Federal thicket, as we conclude that the taping was not illegal under Federal law.

able qualities you've shown me since then." He alerted Tom to the arrival of the card in one of the conversations allowed in evidence by the judge. The defendant also mentioned the card in the conversation of February 2, the recording of which was suppressed by the judge. Because the denial of the motion to suppress the first two conversations, recorded before the police were contacted, was not erroneous, evidence obtained as a result of these conversations was properly admitted in evidence at trial. *Commonwealth* v. *Buchanan*, 384 Mass. at 108.

Regarding the testimony of Detective King, the defendant cannot establish that the later conversations which King listened to are "fruits" of a suppressed telephone call. Rather, the detective was informed of the follow-up telephone calls by monitoring Tom's interview with the district attorney's office.[7]

III. *Limitation on cross-examination at trial.* During the cross-examination of Tom at trial, he was asked whether he met with a "private civil lawyer." The prosecution's objection to the questioning was sustained by the trial judge. On cross-examination of Tom's mother, defense counsel was cut short once again by the judge after defense counsel asked Tom's mother whether she "took [Tom] to see an attorney." The defendant claims that the prosecutor played up his advantage in closing argument, when he emphasized the defendant's motive to lie, while the defendant's chance to question Tom and his family about their motives to fabricate had been foreclosed by the judge.

"If, on the facts, there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject." *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). At trial, the judge sustained the prosecutor's objections to questions regarding the goals of Tom's family in contacting and meeting with a civil attorney. If the family hoped to sue the defendant in a civil suit and thereby win money damages, that fact was relevant to the jury's determination of any bias on the family's part that could shade

---

[7]We note that the defendant's argument on Detective King's testimony is limited to one sentence. The testimony was also not objected to at trial, and was not the subject of a motion to suppress. See *Commonwealth* v. *Eason*, 427 Mass. 595, 597-598 (1998).

their testimony against the defendant. The judge erred when she foreclosed cross-examination on the family's motives for contacting a civil attorney, and whether their goals in doing so could have led them to offer biased testimony. In the context of the trial, however, the error was not materially prejudicial. See *Commonwealth* v. *St. Peter*, 48 Mass. App. Ct. 517, 523 (2000).

The evidence against the defendant was overwhelming. It included the tape recordings of conversations between Tom and the defendant; Tom's detailed description of indecent touching and the oral and anal sex acts committed by the defendant; a sentimental greeting card the defendant sent to Tom; and the defendant's own testimony, including his attempts (which the jury could well have found implausible) to explain parts of the recorded conversations in which he refers to "making love" and discusses masturbation. Given the strength of the Commonwealth's case against the defendant, we conclude with assurance that the judge's error did not substantially sway the outcome of the case. *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 806 (2001).

*Judgments affirmed.*