George **BARBOZA**, Petitioner,

v.

Lynne **BISSONNETTE**, Respondent.

**Civil Action No. 03–10600–JLT.**

United States District Court,
D. Massachusetts.

April 20, 2006.

Robert L. Sheketoff, Boston, MA, for Petitioner.

David M. Lieber, Assistant Attorney General, Boston, MA, for Respondent.

## ORDER

TAURO, District Judge.

ORDER ADOPTING REPORT AND RECOMMENDATIONS for 20 Report and Recommendations Action on motion: DENIED.(Abaid, Kim) (Entered: 05/17/2006)

## *REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS*

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

On April 24, 1998, the petitioner George Barboza ("Barboza" or the "petitioner") was convicted by a Middlesex County jury of four counts of rape of a child under sixteen in violation of Mass. Gen. Laws ch. 265, § 23, and two counts of indecent assault and battery on a child under fourteen in violation of Mass. General Laws ch. 265, § 13B. Of relevance to the instant matter is that during the trial tape recordings made by the victim's father, without consent, of two telephone conversations between Barboza and the minor were introduced into evidence over Barboza's objection. In addition, Barboza was precluded from cross-examining the victim and his mother about the victim's family's goals in contacting and meeting with a civil attorney, by which testimony Barboza aimed to establish bias.

Barboza's conviction was affirmed by the Massachusetts Appeals Court in *Commonwealth v. Barboza*, 54 Mass.App.Ct. 99, 763 N.E.2d 547 (2002), and his application for leave to obtain further appellate review ("ALOFAR") by the Massachusetts Supreme Judicial Court ("SJC") was denied without opinion. *Commonwealth v. Barboza*, 436 Mass. 1104, 768 N.E.2d 1086 (2002) (table). Barboza filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the admission of the tape recordings as being violative of the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 ("Title III"), and challenging the limitation on cross-examination as being a violation of his Sixth Amendment right of confrontation. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Barboza's Petition for Writ of Habeas Corpus be DENIED.

### II. *STATEMENT OF FACTS* [1]

#### *The Underlying Crime*

The relevant facts, as recited in the Appeals Court decision, are as follows.

The victim (referred to by the Appeals Court by the pseudonym "Tom"), was born on May 7, 1981. *Barboza*, 54 Mass.App. Ct. at 101, 763 N.E.2d at 550. The victim's father worked for Barboza, but the family had little contact with him until approximately 1993, when the family moved to the same town as Barboza. Thereafter, there was frequent contact between the family and the petitioner, including occasions when the victim stayed overnight with the petitioner in his home. *Id.* In 1995, the victim visited the petitioner alone in Florida over February vacation, and in 1996 the victim and his family visited with the petitioner in Florida. During this visit, the victim and petitioner shared one hotel room while the parents and an-

---

1. The respondent has filed a Supplemental Answer containing the record below (Docket No. 8) which will be cited as "SA Ex.____". In addition, the respondent has filed, under seal, a Second Supplemental Answer (Docket No. 15) containing the transcripts of the trial court proceedings. Pursuant to the court's order of November 3, 2004, the SEALED Second Supplemental Answer is to remain sealed throughout the pendency of this action and returned to the respondent upon its completion.

other child stayed in another room. *Id.* It was after this visit that the parents began to feel uneasy about their son's close relationship with Barboza. *Id.* After the family returned from Florida in December 1996, the petitioner called the victim regularly on the phone. Following these calls, the victim would be unusually quiet, and would be secretive about the calls. *Id.*

Because of the parents' concern, the victim's father bought a tape recorder he had seen in a magazine to secretly record telephone conversations at the house. *Id.* The recorder was installed without the victim's knowledge. *Id.* In all, four conversations between the victim and Barboza were recorded: two on January 30, 1997, one on February 2, 1997 and one on February 5, 1997. *Id.* at 101–102, 763 N.E.2d at 550. As the Appeals Court found, "[i]n all of the conversations, the defendant declared that he loved Tom, and in at least the last three conversations there are references to masturbation. Further, in the second call on January 30, the defendant mentions 'making love.'" *Id.* at 102, 763 N.E.2d at 550.

After the calls on January 30, 1997, the victim's father met with members of the police department, and played them portions of the second taped conversation. *Id.* at 102, 763 N.E.2d at 550–51. On February 5, the parents confronted the victim, "informing him that they knew there 'was some kind of sexual thing going on' between him and ... [Barboza]." *Id.* at 102, 763 N.E.2d at 551. On February 7, the victim and his father went to the district attorney's office. During that meeting, the father was asked by the district attorney's office not to tape any more calls, but he did so anyway. *Id.*

A police officer, with the victim's consent, subsequently listened in on two additional telephone conversations between the victim and the petitioner. *Id.* These were not recorded and were not the subject of the motion to suppress brought before the trial court, although they were included in his appeal. The petitioner was arrested upon his return from Florida on February 14, 1997. *Id.*

### The Criminal Proceedings

The petitioner was indicted by a Middlesex Country grand jury on March 7, 1997. He moved to suppress the tape recordings, and a hearing was held. The parents and victim testified to the facts as detailed above. *Id.* at 101, 763 N.E.2d at 550. At the end of the hearing, "the motion judge stated that there's no question in the Court's mind at all that the parents' primary concern was their son and that everything they did was not to assist law enforcement in their minds but to try to figure out what was going on and what's right for their son and for their family." *Id.* at 102, 763 N.E.2d at 551 (internal punctuation omitted). The motion judge denied the motion to suppress as to the two conversations on January 30, which had been recorded before any contact with police, but allowed the motion as to the subsequent recorded conversations. *Id.* The judge reasoned that although the parents had been told not to record any more conversations, "under the circumstances, silence by the police made the parents unwitting agents of the police for the purposes of continuing to record telephone calls from the defendant." *Id.* at 102–03, 763 N.E.2d at 551.

### The Testimony at Trial

The victim, his parents, the police officer who listened in on the telephone conversations[2] and the defendant testified at trial.

---

2. Although not raised at trial, on appeal the petitioner also argued that the police officer's testimony about the conversations he listened in on should have been suppressed as having been derived from the suppressed recordings. *Barboza,* 54 Mass.App.Ct. at 102, 763 N.E.2d at 551.

The victim's testimony included "descriptions of numerous acts of indecent touching, and oral and anal sex committed by the defendant." *Id.* at 100, 763 N.E.2d at 549–50. The Appeals Court characterized the evidence against the petitioner as being "overwhelming" and summarized it as follows:

> [The evidence] included the tape recordings of conversations between Tom and the defendant; Tom's detailed description of indecent touching and the oral and anal sex acts committed by the defendant; a sentimental greeting card the defendant sent to Tom; and the defendant's own testimony, including his attempts (which the jury could well have found implausible) to explain parts of the recorded conversations in which he refers to "making love" and discusses masturbation.

*Id.* at 110, 763 N.E.2d 547, 763 N.E.2d at 556.[3]

During cross-examination at trial, the victim was asked "whether he met with a 'private civil lawyer.'" *Id.* at 109, 763 N.E.2d at 555. The government's objection to this questioning was sustained. The victim's mother was asked during her cross-examination whether she "took [Tom] to see an attorney" but the trial judge cut off this line of questioning as well. *Id.* By so doing, Barboza argues, he was precluded from developing the testimony to establish that the victim and his family had a motive to lie, i.e., that they hoped to sue the petitioner in a civil suit for monetary damages. *See id.* at 109–11, 763 N.E.2d 547, 763 N.E.2d at 555–56.

*The Appeal*

Barboza filed a timely appeal with the Appeals Court. Therein he argued that "(1) the recordings of the two earlier calls should have been suppressed; (2) other evidence which he claims was obtained as a result of the recordings should have been suppressed as 'fruit of the poisonous tree'; (3) his attorney's cross-examination of witnesses for bias was improperly limited; and (4) ineffective assistance of counsel" on the grounds that his counsel had not raised the issue whether the recordings violated the federal wiretap law. *Id.* at 100, 105, 763 N.E.2d at 550, 553. The Appeals Court affirmed the convictions. Of relevance to the instant habeas petition, the Appeals Court found that the admission of the recordings did not violate either the Massachusetts wiretap statute, Mass. Gen. Laws ch. 272, § 99 or Title III and that, therefore, it was not ineffective assistance of counsel to fail to raise the federal law before the trial judge. In addition, the Appeals Court concluded that the limitation on cross-examination at trial was in error, because the defendant should have been able to explore even a remote possibility of bias. Nevertheless, the court found that "the error was not materially prejudicial" and that the court could "conclude with assurance that the judge's error did not substantially sway the outcome of the case." *Id.* at 111, 763 N.E.2d at 556.

The petitioner filed a timely ALOFAR. Therein he raised the following issues:

1. Did the trial court err by refusing to suppress tape recordings that were made in violation of this state's criminal law and the federal and state wiretap

---

**3.** The referenced greeting card, which had been discussed in one of the admitted telephone conversations, had been sent by the petitioner to the victim and included a preprinted message expressing "all the wonderful feelings I've known because of you," in-

cluding the language "I love you more than ever . . . for all the reasons that made me fall in love with you in the first place and all the other lovable qualities you've shown me since then." *Barboza,* 54 Mass.App.Ct. at 108–109, 763 N.E.2d at 555.

statutes by private parties; or, does *Commonwealth v. Santoro*, 406 Mass. 421, 548 N.E.2d 862 (1990), put all such conduct beyond the reach of the exclusionary rule?

2. Did the trial court err by not suppressing the fruits of the illegal recordings?

3. Did the trial court's erroneous restriction of cross-examination on bias and motive violate the defendant's federal constitutional right to due process; and, should the Appeals Court be permitted to apply any ad hoc harmless error standard it chooses?

SA Ex. B at 11. Barboza did not raise a claim of ineffective assistance of counsel in the ALOFAR. As noted above, the ALO-FAR was denied without opinion.

Barboza then filed a timely petition for a writ of habeas corpus. He has raised two grounds: (1) whether the admission of the two tape recordings violated Title III, and (2) whether the Appeals Court applied the wrong standard in reviewing the limitation imposed by the trial judge on cross-examination, thereby wrongfully concluding that there was no violation of his constitutional rights. The respondent contends that the challenge to the recordings is not appropriately reviewed in connection with a habeas petition. In addition, the respondent contends that neither of the grounds asserted state a claim warranting habeas relief.

Additional facts will be presented below where appropriate.

## III. *DISCUSSION*

### A. *Ground One—Violation of Title III*

### 1. *Reviewability of Ruling*

 As his first ground for relief, Barboza argues that the admission of the tape recordings violated relevant wiretap statutes. The respondent contends that any review of the court's ruling under Massachusetts law is unavailable in a habeas proceeding, and that Barboza waived his right to challenge the admissibility of the recordings under federal law by not presenting the federal claim to the trial court. This court finds that the petitioner is not asserting only a state law claim, and that there has not been a waiver of the challenge under Title III. Therefore, it is appropriate to review the trial court's decision to admit the recordings under Title III, although the scope of review is limited as described below.

It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). See also *Adelson v. DiPaola*, 131 F.3d 259, 262 n. 3 (1st Cir.1997), and cases cited (federal habeas review not available to challenge alleged errors of state, not federal, law); *Hamm v. Latessa*, 72 F.3d 947, 954 (1st Cir.1995) ("The rule, then, is that a federal habeas court will not disturb the state court's construction or application of state law unless it can be shown that such construction or application offends the Constitution or some (applicable) federal statute."). Therefore, to the extent that Barboza's habeas petition can be read to challenge the state court's interpretation of the scope of the Massachusetts wiretap statute, Mass. Gen. Laws ch. 272, § 99, habeas review would not be available. However, a fair reading of Barboza's habeas petition establishes that he is challenging the admission of the tape recordings as being in violation of Title III—he has not renewed his state law challenge.

See Petitioner's Initial Memorandum in Support of His Petition for Writ of Habeas Corpus (Docket No. 2) ("Pet.Mem.") at 7–10.

 The respondent argues that the petitioner waived his right to raise his Title III claim because it was not presented to the trial judge, and that, to the extent that Barboza contends that the failure to raise the claim was due to ineffective assistance of counsel, such a claim has been waived as well. It is well established that, barring exceptional circumstances, "a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court." *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002). In Massachusetts, that means that the claim must be raised in the ALOFAR presented to the SJC. *See Adelson*, 131 F.3d at 263 ("the decisive pleading is the application for further appellate review, and [the court] must determine whether the petitioner fairly presented the federal claim to the SJC within 'the four corners' of the application"). Since no claim of ineffective assistance of counsel was raised in the ALOFAR, that issue has not been exhausted and cannot be raised in the habeas petition.

 While it is undisputed that Barboza did not raise his Title III claim before the trial judge, this court concludes that the issue has not been waived. The Appeals Court addressed the merits of the claim, and, while noting that the issue had not been raised below, did not rely on the lack of objection in reaching its decision.

*See Barboza*, 54 Mass.App.Ct. at 105–08, 763 N.E.2d at 553–55. Where, as here, a claim may be "procedurally defaulted" for failure to raise an objection at the trial level, the claim may, nevertheless, "be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default." *Manisy v. Maloney*, 283 F.Supp.2d 307, 311 (D.Mass.2003) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). In light of the Appeals Court's decision on the merits, Barboza's claim of violation of Title III is subject to review by this habeas court.

### 2. Standard of Review of Non–Constitutional Claim

 As the petitioner recognizes, he cannot by way of a habeas petition seek to exclude the tape recordings on the grounds that their admission violated his constitutional rights. As the United States Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See also* Pet. Mem. at 7. Nevertheless, as courts have found, an allegation of a violation of the federal wiretapping statute may be presented in a habeas petition. *See Llamas–Almaguer v. Wainwright*, 666 F.2d 191, 193–94 (5th Cir. 1982); *Adams v. Lankford*, 788 F.2d 1493, 1495 (11th Cir.1986).[4] The distinction is

---

4. There are cases that have found that, based on Stone, the only question open in a Title III challenge raised in a habeas petition is "whether the petitioner had a full and fair opportunity in the state courts to litigate his objections to the wiretapping." *See, e.g., Zagarino v. West*, 422 F.Supp. 812, 814 (E.D.N.Y.1976); *Pobliner v. Fogg*, 438 F.Supp. 890, 892 (S.D.N.Y.1977). However, later cases do not generally follow that approach. *See, e.g., Lord v. Lambert*, 347 F.3d 1091, 1095 (9th Cir.2003) (ruling not only that petitioner received a full and fair hearing in the state courts, but also that there was no miscarriage

based on the fact that in *Stone* "the Supreme Court decided the scope of a judicially-created exclusionary rule," whereas a challenge under Title III "involves an exclusionary rule of congressional origin." *Hussong v. Warden, Wis. State Reformatory*, 623 F.2d 1185, 1187 (7th Cir.1980). Nevertheless, the standard for obtaining habeas relief is quite difficult, and has not been satisfied in the instant case.

The analysis of the appropriate standard of review for a non-constitutional claim begins with *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). There the defendant had not been offered the opportunity to make a statement on his own behalf in connection with his sentencing, in violation of Rule 32(a) of the Federal Rules of Civil Procedure. As the court held:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'

*Id.* at 428, 82 S.Ct. at 471 (internal quotations and citation omitted). The same analysis was applied in *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), where the trial judge violated Fed. Rule Crim. Proc. 11 by ac-

cepting a guilty plea without informing the defendant of a mandatory special parole term. When the issue was raised in a habeas petition filed pursuant to 28 U.S.C. § 2255, the court held that since the violation was "neither constitutional nor jurisdictional" the standard defined by *Hill* would apply. *Id.* at 783–84, 99 S.Ct. at 2087. Finding that the error did not result in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure" the court concluded that habeas relief was not available. *Id.* In sum, "Hill controls collateral review—under both [28 U.S.C.] §§ 2254 and 2255—when a federal statute, but not the Constitution, is the basis for the postconviction attack." *Reed v. Farley*, 512 U.S. 339, 353–54, 114 S.Ct. 2291, 2299–2300, 129 L.Ed.2d 277 (1994).

■■■ A "violation of the federal wiretap statute is neither constitutional nor jurisdictional." *Hussong*, 623 F.2d at 1190–91. Applying the Hill standard, this court concludes that Barboza has not stated a claim for habeas relief. Thus, Barboza's custody is not the result of a "complete miscarriage of justice." As the *Hussong* court stated in language applicable to the instant case, "[a]lthough [the petitioner] has alleged a substantial violation of federal law, the fact is that he was convicted on the basis of qualitatively unimpaired evidence—even though it may have been tainted because of procedural irregularities.... In short, there is nothing in the record to indicate that [Barboza] is not guilty of the crime for which he was convicted." *Id.* at 1191.

Suppression of evidence is not based on a need to insure that a conviction is based on credible evidence. As it has been held:

of justice resulting from testimony that was allegedly fruit of a Title III violation), *cert. denied*, 543 U.S. 830, 125 S.Ct. 77, 160 L.Ed.2d 47 (2004); *Zambrana v. United States*, 790 F.Supp. 838, 843–44 (N.D.Ind.

1992) (Title III challenge may be raised in habeas petition to show that the conviction constitutes "a complete miscarriage of justice" (quotations and citation omitted)).

The evidence gathered from electronic surveillance is directly probative on the issue of a defendant's guilt; indeed, in reconstructing past events, a recorded conversation often provides information for the triers of fact that is far more accurate than the circumstantial evidence gathered, for example, by seizure of contraband items from a building owned by a defendant. Frequently, evidence gained from wiretaps alone "establishes beyond virtually any shadow of a doubt that the defendant is guilty[.]" Thus, application of the exclusionary rule to claims of illegal electronic surveillance has the same result as the application of the rule to ordinary searches and seizures. In both situations, suppression of otherwise probative evidence "deflects the truthfinding process and often frees the guilty."

*Zagarino*, 422 F.Supp. at 817 (internal citations omitted). Based on the record, it is clear that the state court's ruling did not result in a complete miscarriage of justice.

The record also establishes that Barboza had a full and fair hearing in the state courts on his suppression claim. Not only was there an evidentiary hearing before the trial judge, but there was a full review under by the Appeals Court. Under such circumstances, Barboza's custody is not "inconsistent with the rudimentary demands of fair procedure." *See Hussong*, 623 F.2d at 1191 (internal quotations and citation omitted).

Finally, this case does not involve "exceptional circumstances" warranting habeas relief. *Id.* at 1190; *Llamas–Almaguer*, 666 F.2d at 194. As the Appeals Court found, suppression in the instant case would do nothing to further "the exclusionary rule's purpose of deterring future police misconduct." *Barboza*, 54 Mass.App. Ct. at 104, 763 N.E.2d at 552. The parents' primary motivation "was their son" and "everything they did was not to assist law enforcement in their minds but to try and figure out what was going on and what's right for their son and their family." *Id.* Under such circumstances, Barboza's challenge to a non-constitutional violation of a federal statute does not warrant habeas relief.[5]

---

**5.** Relying on *Adams v. Lankford*, 788 F.2d 1493 (11th Cir.1986), Barboza argues that the violation was not merely a "technical one," and that suppression is necessary to further the core concerns of Title III, namely "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." *Id.* at 1498 (citation omitted). In *Adams,* the challenge was to whether the district attorney and judge from the appropriate county were involved in seeking and issuing the wiretap orders. *Id.* Since the challenge was to merely "technical violations" and did not "implicate the core concerns of Title III," the court did not have to address whether the Hill standard applied. *See id.* at 1496 n. 6. Nothing in *Adams* is inconsistent with this court's analysis, the court never reached the relevant inquiry. The fact that Barboza is challenging the actu-

al taping, as opposed to the procedure by which approval for a wiretap is obtained, does not alter the fact that Barboza's challenge is "neither constitutional nor jurisdictional." Consequently, the Hill standard of review should apply. *See Hussong*, 623 F.2d at 1190–91. Finally, suppression here would not further the core concerns of Title III. Any challenge under Title III would relate to the purpose of the statute in protecting the privacy of the communications, so that factor cannot be controlling. There is nothing in the instant case which would create uniformity in the manner in which interceptions would be authorized. Rather, as Barboza notes, "there is a substantial split in the Circuits as to intrafamily eavesdropping, and for those Circuits accepting it, the rationale for so doing." Pet. Mem. at 9. The purposes of Title III identified by the *Adams* court really have no relevance to the issues raised by the instant case.

### 3. The State Court Decision Was Not Contrary To or An Unreasonable Application of Law as Defined by the Supreme Court

 Assuming, *arguendo*, that the state court decisions denying petitioner's motion to suppress were subject to review on the merits in this habeas petition, Barboza has still failed to state a claim. Consequently, the habeas petition should be denied.

The standard of review to be applied to Barboza's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

 With respect to the "contrary to" analysis, the habeas court must first determine "whether the Supreme Court has prescribed a rule that governs the petitioner's claim." *Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir.1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1178, 145 L.Ed.2d 1086 (2000). Only those cases decided by the United States Supreme Court are relevant. *Id.* at 65. As the court held in *Yarborough v. Alvarado*, 541 U.S. 652, 653, 124 S.Ct. 2140, 2142, 158 L.Ed.2d 938 (2004), "[f]or purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.' *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.' *Lockyer v. Andrade*, 538 U.S. 63, 71, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)." If there is no relevant ruling on the part of the Supreme Court, the petitioner cannot establish that the state court ruling was "contrary to" Supreme Court precedent. *Vieux*, 184 F.3d at 65.

 If the state court decision was not "contrary to" federal law as defined by the Supreme Court, the habeas court must then determine "whether the state court ruling was an 'unreasonable application' of the Court's precedent." *Id.* at 65–66. An "unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850. In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal citation and quotation omitted). This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, a "habeas petitioner must do more than merely identify an incorrect result." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003). "Rather, that application must also

be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000). *See also Smiley v. Maloney*, 422 F.3d 17, 20 (1st Cir.2005); *Horton v. Allen*, 370 F.3d 75, 79–80 (1st Cir.2004).

For the reasons detailed herein, Barboza has failed to satisfy either criteria for habeas relief.

■■■ The Supreme Court has not addressed the issue of whether a custodial parent taping a minor child's conversation within the family home is a violation of Title III. Therefore, the Appeals Court decision was not "contrary to" clearly established law as defined by the Supreme Court. *See McCambridge*, 303 F.3d at 35–36 (to satisfy "contrary to" clause, the state court must either reach a conclusion opposite to that reached by the Supreme Court on a question of law, or decide a case differently than the Supreme Court has on a set of materially indistinguishable facts). Nor is the Appeals Court's decision "unreasonable." The "test is not whether it is possible that a competent court could have reached the same conclusion." *Id.* at 36 (citation omitted). Thus, "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *Id.* In the instant case, as the petitioner recognizes, there is a split in the Circuits as to whether such tape-recordings violate Title III. *See e.g., Newcomb v. Ingle*, 944 F.2d 1534, 1535–36 (10th Cir.1991) (custodial parent's taping of minor child's telephone conversation within the home did not violate Title III); *Pollock v. Pollock*, 154 F.3d 601, 607–610 (6th Cir.1998) (reviewing cases from different circuits all finding no violation of Title III, albeit on varying grounds). Under Federal law, there clearly are exceptions to the Title III requirements of a warrant or consent. *See Vieux*, 184 F.3d at 65 (Massachusetts Appeals Court decision that sister's listening in on telephone extension to conversation between rape victim's mother and defendant fell within the "ordinary course of business" exception in Title III is not contrary to or an unreasonable application of federal law). "[T]he Massachusetts Appeals Court issued a decision that cannot be deemed unreasonable in light of a healthy debate among a number of courts." *Vieux*, 184 F.3d at 67. Consequently, Barboza's petition for habeas relief should be denied.

### B. *Ground II—Limitation on Cross–Examination*

Barboza's second ground for relief is based on the trial court's decision to limit cross-examination on the issue of the victim's family's meeting with private counsel. As the Appeals Court explained the situation, "[a]t trial, the judge sustained the prosecutor's objections to questions regarding the goals of Tom's family in contacting and meeting with a civil attorney. If the family hoped to sue the defendant in a civil suit and thereby win money damages, that fact was relevant to the jury's determination of any bias on the family's part that could shade their testimony against the defendant." *Barboza*, 54 Mass.App.Ct. at 109–110, 763 N.E.2d at 556. The Appeals Court concluded that while the limitation on the examination was in error, "the error was not materially prejudicial." *Id.* at 110, 763 N.E.2d at 556 (citing *Commonwealth v. St. Peter*, 48 Mass.App.Ct. 517, 523, 722 N.E.2d 1002 (2000)). The Appeals Court then summarized the evidence against the defendant, which it found to be "overwhelming." *Barboza*, 54 Mass.App.Ct. at 110, 763 N.E.2d at 556 Finally, the Appeals Court ruled that "[g]iven the strength of the Commonwealth's case against the defendant, we conclude with assurance that the judge's error did not substantially sway the outcome of the case." *Id.* (citing *Com-*

*monwealth v. Alves,* 50 Mass.App.Ct. 796, 806, 741 N.E.2d 473 (2001)).

Barboza contends that the Appeals Court erred in not applying the appropriate standard of review, namely whether the error was harmless beyond a reasonable doubt. He also contends that the error was not harmless beyond a reasonable doubt. For the reasons detailed herein, this court concludes that Barboza has not asserted a basis for habeas relief, and that, regardless of the standard applied, Barboza's petition for habeas relief should be denied.

### 1. *Appropriate Standard of Review By the Appeals Court*

 It is undisputed that the Sixth Amendment to the United States Constitution grants a defendant the right to cross-examine witnesses for the purpose of "revealing possible biases, prejudices, or ulterior motives ... as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Thus, it has long been "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* The Massachusetts Appeals Court ruling that the trial judge erred in limiting the defense cross-examination in Barboza's case, therefore, was consistent with federal law. *See, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) ("a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness").

 There are a limited number of constitutional errors, "such as denying a defendant the assistance of counsel at trial, or compelling him to stand trial before a trier of fact with a financial stake in the outcome" that "are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." *Id.* at 681, 106 S.Ct. at 1436. However, "the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Id.* at 682, 106 S.Ct. at 1437. Rather, this type of constitutional error is subject to a "harmless error" review. *See Sanna v. Dipaolo,* 265 F.3d 1, 14 (1st Cir.2001). Consequently, on direct appeal the court is to apply the standard set by the United States Supreme Court in *Chapman v. State of California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), namely that "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *See Sanna,* 265 F.3d at 14. *See also Mitchell v. Esparza,* 540 U.S. 12, 17–18, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("A constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.") (internal quotations and citations omitted).

Barboza contends that the Appeals Court did not apply the appropriate standard of beyond a reasonable doubt. This court does not agree. The Appeals Court, "while not explicitly invoking *Chapman,* applied an essentially equivalent standard." *Sanna,* 265 F.3d at 14–15 n. 6. The court found the evidence "overwhelming" and it reached its decision "with assurance that the judge's error did not substantially sway the outcome of the case." *Barboza,* 54 Mass.App.Ct. at 110, 763 N.E.2d at 556. The "overwhelming" evidence included not only the victim's own testimony, but the defendant's own testimony, including his recorded statements, his testimony at trial in which he attempted to explain the references to "making love" and masturbation,

and which, according to the Appeals Court, "the jury could well have found implausible, and a sentimental greeting card which Barboza had sent." The Appeals Court's language is substantially similar to the "beyond a reasonable doubt" *Chapman* standard. Therefore, there is no basis for habeas relief.

### 2. *The Habeas Standard of Review*

 Assuming, *arguendo*, that the Appeals Court did not apply the correct standard, the habeas petition should nevertheless be denied. In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court ruled that while the *Chapman* reasonable doubt standard should be applied to constitutional errors on direct appeal, a "less onerous standard" should be applied on habeas review of constitutional errors. *Id.* at 637, 113 S.Ct. at 1721–22. Thus, the appropriate test is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

 There are some courts which have held that the *Brecht* standard should be applied in habeas cases only where the state court itself made a *Chapman* harmless error analysis. *See Fortini v. Murphy*, 257 F.3d 39, 48 (1st Cir.2001), and

cases cited. "Most circuits, however, have taken the view that *Brecht* applies in habeas corpus cases without qualification" and while the First Circuit has not definitively ruled on the issue, it has indicated that it would probably apply *Brecht* "in habeas cases regardless of whether the state court itself made a *Chapman* harmless error analysis." *Id.* In the instant case, the respondent has met her burden of proof regardless of which standard is applied. *See Libby v. Duval*, 19 F.3d 733, 739–40 n. 15 (1st Cir.1994) (the party arguing the harmlessness of an error must bear the burden of proof). The overwhelming evidence establishes that any error in limiting cross examination was harmless beyond a reasonable doubt. It, therefore, also meets the less burdensome *Brecht* standard.

### IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Barboza's petition for a writ of habeas corpus be DENIED.[6]

---

**6.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See*

*Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).